1  Samuel R. Randall (No. 024517)
   **RANDALL LAW PLLC**
2  4742 North 24th Street, Suite 300
3  Phoenix, Arizona 85016
   Telephone:   602.328.0262
4  Facsimile:   602.926.1479
   Email:       srandall@randallslaw.com
5

6  Michael A. Josephson (*pro hac vice forthcoming*)
   Andrew W. Dunlap (*pro hac vice forthcoming*)
7  **JOSEPHSON DUNLAP LLP**
8  11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
9  Telephone:   713.352.1100
   Facsimile:   713.352.3300
10 Emails:      mjosephson@mybackwages.com
                adunlap@mybackwages.com
11

12 Richard J. (Rex) Burch (*pro hac vice forthcoming*)
13 **BRUCKNER BURCH PLLC**
   11 Greenway Plaza, Suite 3025
14 Houston, Texas 77046
15 Telephone:   713.877.8788
   Email:       rburch@brucknerburch.com
16

17 **ATTORNEYS FOR FLEMING AND THE HOURLY EMPLOYEES**

18
19              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF ARIZONA**
20                    **PHOENIX DIVISION**

21  Jeremy Fleming, Individually and for Others | Case No. _____
22  Similarly Situated,                         |
                                                | **ORIGINAL CLASS AND**
23       Plaintiff,                             | **COLLECTIVE ACTION**
                                                | **COMPLAINT FOR DAMAGES**
24  v.                                          |
25                                              |
    Priority Ambulance, LLC, a Delaware         | **(1) Failure to Pay Overtime Wages**
26  limited liability company,                  | **(Fair Labor Standards Act, 29**
                                                | **U.S.C. § 201, *et seq.*);**
27       Defendant.                             |
28

- 1 -

**(2) Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. § 23-350, *et seq.*).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jeremy Fleming (Fleming) brings this class and collective action to recover unpaid wages and other damages from Priority Ambulance, LLC (Priority).

2. Priority employs Fleming as one of its Hourly Employees (defined below).

3. Fleming and the other Hourly Employees regularly work more than 40 hours a workweek.

4. Priority pays them by the hour.

5. But Priority does not pay Fleming and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

6. Instead, Priority pays Fleming and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Priority's "bonus pay scheme").

7. Priority's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Fleming and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

8. And Priority thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of the Arizona Wage Act (AWA).

### JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Priority because it maintains its principal place of business in Arizona.

12. Venue is proper because Priority maintains its principal place of business in Scottsdale, Arizona, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

13. Priority has employed Fleming as a paramedic in Arizona since approximately May 2024.

14. Throughout his employment, Priority has paid Fleming under its bonus pay scheme.

15. Fleming's written consent is attached as **Exhibit 1**.

16. Fleming brings this class and collective action on behalf of himself, and other similarly situated Priority employees paid under its bonus pay scheme.

17. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Priority employees who were paid a bonus not included in their regular rate of pay during the last three years through final resolution of this action (the "FLSA Collective Members").**

18. The putative AWA class of similarly situated employees is defined as:

> **All hourly Priority employees who worked in Arizona who were paid a bonus not included in their regular rate of pay during the last one year through final resolution of this action (the "Arizona Class Members").**

19. The FLSA Collective Members and the Arizona Class Members are collectively referred to as the "Hourly Employees."

20. Priority is a Delaware limited liability company headquartered in Scottsdale, Arizona.

21. Priority may be served with process through its registered agent: C T Corporation System, 3800 N. Central Ave., Ste. 460, Phoenix, Arizona 85012.

## FLSA Coverage

22. At all relevant times, Priority was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, Priority was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, Priority was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, Priority had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, Fleming and the other Hourly Employees were Priority's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, Fleming and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## Facts

28. Priority touts itself as "one of the largest national ambulance companies with locations in dozens of communities throughout the United States."[1]

29. Priority advertises job openings and solicits job applications through its website and advertises that it "offer[s] a rich relocation package to qualified National Registry EMTs and paramedics interested in a change of scenery."[2]

---

[1] https://priorityambulance.com/careers/ (last visited May 13, 2025).
[2] *Id.*

- 4 -

30. To meet its business objectives, Priority employs workers, including Fleming and the other Hourly Employees, to transport and care for patients.

31. For example, Priority has employed Fleming as a paramedic in and around Prescott, Arizona since approximately May 2025.

32. As a paramedic, Fleming's primary job duties include receiving and responding to 911 calls via ambulance, evaluating patients' illness or injury, providing medical care, transporting patients to appropriate medical facilities, and completing required paperwork.

33. Throughout his employment, Fleming has regularly worked more than 40 hours a workweek.

34. Indeed, Fleming typically works approximately 2 to 4 24-hour shifts a week "on the clock" (48 to 96 hours a workweek).

35. Indeed, during the first week of May 2025, Fleming worked approximately 96 hours during the workweek.

36. Likewise, the other Hourly Employees typically work approximately 12-hour shifts and 2 to 4 24-hour shifts or 4 to 6 12-hour shifts a week "on the clock" (48 to 96 hours a workweek).

37. Fleming and the other Hourly Employees are required to report their "on the clock" hours worked via Priority's designated timekeeping system.

38. Priority agreed to pay Fleming approximately $26.34 an hour.

39. Priority agreed to pay the other Hourly Employees a similar hourly rate.

40. But Priority does not pay Fleming and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 in a workweek.

41. Instead, Priority pays Fleming and the other Hourly Employees under its bonus pay scheme.

42. Specifically, Priority pays Fleming and the other Hourly Employees non-discretionary bonuses, including attendance bonuses and sign-on bonuses, that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

43. Thus, under its bonus pay scheme, Priority does not pay Fleming and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek, in violation of the FLSA and AWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

44. Fleming brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

45. Like Fleming, the other Hourly Employees are victimized by Priority's bonus pay scheme.

46. Other Hourly Employees worked with Fleming and indicated they were paid in the same or similar manner under Priority's bonus pay scheme.

47. Based on his experience with Priority, Fleming is aware Priority's bonus pay scheme was imposed on other Hourly Employees.

48. The Hourly Employees are similarly situated in the most relevant respects.

49. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

50. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

51. Rather, Priority's bonus pay scheme renders Fleming and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek.

52. Priority's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

53. Priority's records also show it paid Fleming and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

54. The back wages owed to Fleming and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

55. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Priority's records, and there is no detraction from the common nucleus of liability facts.

56. Therefore, the issue of damages does not preclude class or collective treatment.

57. Fleming's experiences are therefore typical of the experiences of the other Hourly Employees.

58. Fleming has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

59. Like each Hourly Employee, Fleming has an interest in obtaining the unpaid wages owed under federal and Arizona law.

60. Fleming and his counsel will fairly and adequately protect the interests of the Hourly Employees.

61. Fleming retained counsel with significant experience in handling complex class and collective action litigation.

62. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Priority will reap the unjust benefits of violating the FLSA and AWA.

63. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

64. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Priority.

65. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

66. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

67. Among the common questions of law and fact are:

    a. Whether Priority paid the Hourly Employees non-discretionary bonuses;

    b. Whether Priority failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

    c. Whether Priority failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

    d. Whether Priority failed to timely pay all wages due to the hourly employees;

    e. Whether Priority's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

    f. Whether Priority's violations were willful.

68. As part of its regular business practices, Priority intentionally, willfully, and repeatedly violated the FLSA with respect to Fleming and the other Hourly Employees.

69. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

70. The Hourly Employees are known to Priority, are readily identifiable, and can be located through Priority's business and personnel records.

**PRIORITY'S VIOLATIONS WERE WILLFUL**

71. Priority knew it employed Fleming and the other Hourly Employees.

72. Priority knew it was subject to the FLSA's overtime provisions.

73. Priority knew the FLSA required it to pay non-exempt employees, including Fleming and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

74. Priority knew Fleming and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Priority's timekeeping system.

75. Priority knew Fleming and the other Hourly Employees were non-exempt employees entitled to overtime pay.

76. Priority knew it paid Fleming and the other Hourly Employees non-discretionary bonuses.

77. Priority knew it was required to include these non-discretionary bonuses in their regular rates of pay.

78. Priority knew these non-discretionary bonuses were not included in Fleming's and the other Hourly Employees' regular rates of pay for overtime purposes.

79. And Priority knew the FLSA require it to pay Fleming and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

80. Priority's failure to pay Fleming and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

81. Priority knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Fleming and the other Hourly Employees

of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

### COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

82. Fleming brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

83. Priority violated, and is violating, the FLSA by employing non-exempt employees such as Fleming and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

84. Priority's unlawful conduct harmed Fleming and the other Hourly Employees by depriving them of overtime wages they are owed.

85. Accordingly, Priority owes Fleming and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

86. Because Priority knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Priority owes Fleming and the other Hourly Employees these wages for at least the past 3 years.

87. Priority is also liable to Fleming and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

88. Finally, Fleming and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### COUNT II
### FAILURE TO PAY EARNED WAGES UNDER THE AWA
### (ARIZONA CLASS)

89. Fleming brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

90. The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq.*

91. At all relevant times, Priority was Fleming's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

92. At all relevant times, Priority employed Fleming and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* A.R.S. § 23-350(2).

93. Fleming's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § A.R.S. 23-350(7).

94. The AWA requires employers, like Priority, to timely pay employees, including Fleming and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

95. The AWA further requires employers, like Priority, to timely pay employees, including Fleming and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

96. The AWA prohibits employers, like Priority, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

97. Priority violated, and is violating, the AWA by failing to timely pay, and instead willfully withholding earned overtime wages from Fleming and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

98. Priority's unlawful conduct harmed Fleming and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

99. Accordingly, Priority owes Fleming and the other Arizona Class Members the difference between the rate actually paid and the required overtime rate, which to date, remains outstanding.

100. Priority is liable to Fleming and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

101. Finally, Fleming and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

**JURY DEMAND**

102. Fleming demands a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Fleming, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b.    An Order designating the Arizona Class as a class action pursuant to FED. R. CIV. P. 23;

    c.    An Order appointing Fleming and his counsel to represent the interests of the Arizona Class;

    d.    An Order finding Priority liable to Fleming and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

    e.    An Order finding Priority liable to Fleming and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

    f.    A Judgment against Priority awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

    g.    An Order awarding attorney's fees, costs, and expenses;

    h.    Pre- and post-judgment interest at the highest applicable rates; and

    i.    Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: May 14, 2025 | Respectfully submitted, |
| | **RANDALL LAW PLLC** |
| | By: */s/ Samuel R. Randall* |
| | Samuel R. Randall (No. 024517) |
| | 4742 North 24th Street, Suite 300 |
| | Phoenix, Arizona 85016 |
| | 602-328-0262 – Telephone |
| | 602-926-1479 – Facsimile |
| | srandall@randallslaw.com |
| | |
| | Michael A. Josephson* |
| | Andrew W. Dunlap* |
| | **JOSEPHSON DUNLAP LLP** |
| | 11 Greenway Plaza, Suite 3050 |
| | Houston, Texas 77046 |
| | 713-352-1100 – Telephone |
| | 713-352-3300 – Facsimile |
| | mjosephson@mybackwages.com |
| | adunlap@mybackwages.com |
| | |
| | Richard J. (Rex) Burch* |
| | **BRUCKNER BURCH PLLC** |
| | 11 Greenway Plaza, Suite 3025 |
| | Houston, Texas 77046 |
| | 713-877-8788 – Telephone |
| | rburch@brucknerburch.com |
| | |
| | *Pro hac vice applications forthcoming* |
| | |
| | **ATTORNEYS FOR FLEMING & THE HOURLY EMPLOYEES** |